LATHAM & WATKINS LLP
Richard G. Frenkel (Bar No. 204133)
  *rick.frenkel@lw.com*
140 Scott Drive
Menlo Park, California  94025
Telephone:  +1.650.328.4600
Facsimile:  +1.650.463.2600

Matthew J. Moore (*pro hac vice*)
  *matthew.moore@lw.com*
Adam M. Greenfield (*pro hac vice*)
  *adam.greenfield@lw.com*
Rebecca L. Rabenstein (*pro hac vice*)
  *rebecca.rabenstein@lw.com*
Abigail A. Rives (*pro hac vice*)
  *abigail.rives@lw.com*
Diane E. Ghrist (Bar No. 300487)
  *diane.ghrist@lw.com*
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:  +1.202.637.2200
Facsimile:  +1.202.637.2201

*Attorneys for Defendants*
*CertainTeed Gypsum, Inc. and Saint-Gobain*
*Performance Plastics Corp.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION JUDICIAL DISTRICT

| | |
|---|---|
| Pacific Coast Building Products, Inc., | CASE NO. 5:18-CV-00346-LHK |
| Plaintiff/Counter-Defendant, | **DEFENDANT CERTAINTEED GYPSUM, INC.'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES** |
| v. | |
| CertainTeed Gypsum, Inc. and Saint-Gobain Performance Plastics Corp., | Date:      May 30, 2019<br>Time:      1:30 p.m. PT<br>Place:     Courtroom 8 - 4th Floor<br>Judge:     Hon. Lucy H. Koh |
| Defendants/Counterclaimants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on May 30, 2019, or as soon thereafter as the matter may be heard by the above-titled Court, located at 280 South First Street, San Jose, CA 95133, Courtroom 8, 4th Floor, before the Honorable Lucy H. Koh, Defendant CertainTeed Gypsum, Inc. ("CertainTeed") will, and hereby does, move pursuant to Fed. R. Civ. P. 54(d)(2) and Civil L.R. 54-5 for an order awarding CertainTeed its fees under 35 U.S.C. § 285. This motion is based on the Memorandum of Points and Authorities, the Declaration of Abigail A. Rives and exhibits thereto, and the pleadings and papers on file in this case and the cases related thereto.

## RELIEF REQUESTED

CertainTeed respectfully requests that the Court enter an order in favor of CertainTeed and against Plaintiff Pacific Coast Building Products, Inc. ("Pacific Coast"), awarding CertainTeed its attorneys' fees under 35 U.S.C. § 285. Once the Court finds this litigation exceptional and determines that CertainTeed is entitled to an award under § 285, CertainTeed will provide an accounting of its fees. *See* Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").

# **TABLE OF CONTENTS**

I.      STATEMENT OF ISSUES TO BE DECIDED ................................................. 1

II.     INTRODUCTION ........................................................................................... 1

III.    FACTS ............................................................................................................. 2

        A.      Pacific Coast First Filed Suit in 2017 ................................................ 2

        B.      Pacific Coast Re-Filed the Present Case in 2018 ............................... 3

        C.      Markman Hearing, Case Management Conference, and Claim
                Construction Order .............................................................................. 7

IV.     LEGAL STANDARD ...................................................................................... 8

        A.      Indefiniteness ...................................................................................... 8

        B.      Exceptional Case ................................................................................. 9

V.      ARGUMENT ................................................................................................... 9

        A.      Pacific Coast's Exceptionally Meritless and Shifting Positions Set
                This Case Apart .................................................................................... 9

        B.      Pacific Coast's Expert's Declaration Was Not Credible or
                Responsive ......................................................................................... 13

        C.      Pacific Coast's Litigation Conduct and Unprofessional Behavior
                Warrants Fees .................................................................................... 15

        D.      CertainTeed's Fees Are Reasonable .................................................. 17

VI.     CONCLUSION .............................................................................................. 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*Bayer CropScience AG v. Dow AgroSciences LLC*,
   851 F.3d 1302 (Fed. Cir. 2017)..................................................................................13

5

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*,
   803 F.3d 620 (Fed. Cir. 2015)....................................................................................8

6

7

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011)...................................................................................9

8

9

*Fogerty v. Fantasy, Inc.*,
   510 U.S. 517 (1994).....................................................................................................9

10

*Gabriel Techs. Corp. v. Qualcomm, Inc.*,
   560 F. App'x 966 (Fed. Cir. 2014) ............................................................................14

11

12

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)...................................................................................................17

13

14

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
   341 F.3d 1332 (Fed. Cir. 2003)...................................................................................9

15

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
   558 F.3d 1368 (Fed. Cir. 2009).................................................................................15

16

17

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
   876 F.3d 1372 (Fed. Cir. 2017).................................................................................13

18

19

*IPVX Patent Holdings, Inc. v. Voxernet LLC*,
   No. 5:13-cv-01708-HRL, 2014 WL 5795545 (N.D. Cal. Nov. 6, 2014)................................11

20

*Kilopass Tech., Inc. v. Sidense Corp.*,
   738 F.3d 1302 (Fed. Cir. 2013).................................................................................17

21

22

*MarcTec LLC v. Johnson & Johnson*,
   664 F.3d 907 (Fed. Cir. 2012).........................................................................12, 15, 16

23

24

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988)...................................................................................17

25

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014).....................................................................................................8

26

27

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014).........................................................................................9, 13, 15

28

*Oplus Techs. Ltd. v. Vizio, Inc.*,
    782 F.3d 1371 (Fed. Cir. 2015)........................................................................................16

*Phigenix, Inc. v. Genentech, Inc.*,
    No. 15-cv-01238-BLF, 2018 WL 3845998 (N.D. Cal. Aug. 13, 2018) .................................11

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015).......................................................................................3, 8

**STATUTES**

35 U.S.C. § 285...................................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54(d)(2)(B)(iii) .............................................................................................17

Fed. R. Civ. P. 54(d)(2)(C) ..................................................................................................17

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.   STATEMENT OF ISSUES TO BE DECIDED

Whether CertainTeed, as the prevailing party with regard to U.S. Patent No. 9,388,568 ("the '568 patent"), should be awarded fees related to the '568 patent under 35 U.S.C. § 285 based on Pacific Coast's filing and continued assertion of meritless claims and also litigation misconduct.

## II.  INTRODUCTION

CertainTeed should be awarded its attorneys' fees, estimated at $1,596,822, because Pacific Coast pursued a claim for alleged infringement of the '568 patent based on exceptionally meritless positions that stand out from the norm.  Pacific Coast should have known the only claim it asserted in the '568 patent was invalid before it even filed its first case based on its pre-suit investigation.  To the extent that it did not, Pacific Coast certainly knew that this claim was invalid shortly after filing the case when CertainTeed explained why "scored flexural strength" was indefinite.  And Pacific Coast was (1) unable to articulate a reasonable response or (2) provide any evidence to rebut.

Initially, Pacific Coast argued that the specification describes this limitation in detail.  But that is unquestionably not true so Pacific Coast quickly dropped this argument.

Next, Pacific Coast argued that score depth did not matter.  But that does not pass the straight face test.  Of course, the deeper you cut (i.e., score) through the panel, the easier it is to break.  CertainTeed's expert declaration proved it.

Pacific Coast also argued that, even if score depth did matter, "about 22" included "approximately the range 10-34," which is totally absurd because "22" does not mean "10-34" (i.e., 22 plus or minus 55%).  Finally, Pacific Coast argued for the first time in its claim construction reply that, even if all of Dr. D. Paul Miller's (CertainTeed's expert) test results were reasonable, all of those results should be averaged.  But neither the asserted patent claim nor even Pacific Coast's constructions for the claim mention anything about averaging.  All of these arguments are exceptionally meritless, and required this Court and CertainTeed to withstand almost two years of litigation.

While Pacific Coast also asserted U.S. Patent No. 8,181,738 ("the '738 patent"),

---

CERTAINTEED'S MOTION FOR ATTORNEYS'
FEES

-1-

CASE NO: 5:18-CV-00346-LHK

1  CertainTeed has agreed to not seek fees related to its defense of that claim because Pacific Coast

2  agreed to dismiss that claim with prejudice and grant CertainTeed a covenant not to sue on all past,

3  present, and future products for no payment.

4  **III. FACTS**

5      **A.    Pacific Coast First Filed Suit in 2017**

6      Pacific Coast initially sued CertainTeed on March 3, 2017, alleging that CertainTeed's $5/8$

7  inch SilentFX QuickCut product infringed the '568 and '738 patents.  (*See generally* Case No.

8  5:17-cv-01116, D.I. 1.)  CertainTeed answered on May 5, 2017, asserting affirmative defenses and

9  counterclaims that both patents are invalid.  (Case No. 5:17-cv-01116, D.I. 34, at 12, 15-16.)  As

10  it pertains to this motion, CertainTeed pled that the '568 patent claims are invalid because the

11  "scored flexural strength" terms are indefinite.[1]  (*Id.*)

12      On July 28, 2017, CertainTeed wrote to Pacific Coast explaining in detail why both

13  asserted patents are invalid and Pacific Coast should dismiss the case. (Ex. A.)  The letter reiterated

14  that the "scored flexural strength" claim terms of the '568 patent are indefinite and noted that

15  Pacific Coast's continued litigation would warrant fees.  (*Id.* at 3.)  Pacific Coast responded on

16  August 18, 2017 stating that the specification "provides substantial detail about how a ***flexural***

17  ***strength*** test is to be performed."  (Ex. B, at 3 (emphasis added).)  But Pacific Coast did not

18  mention—let alone defend—***scored*** flexural strength.

19      On August 30, 2017, CertainTeed served invalidity contentions, which again articulated

20  specifically how the "scored flexural strength" terms are indefinite.  (Ex. C (invalidity contentions

21  (at 53-54) and Ex. C-2 thereto).)  The invalidity contentions cited the legal framework for assessing

22  indefiniteness (*id.*) and explained "the patent does not adequately describe how 'scored flexural

23  strength' differs from 'flexural strength,' including but not limited with respect to how deep or in

24  what direction to score," (*id.* at Ex. C-2 (page 4 of 4)).  CertainTeed also identified the patent's

25  failure to "adequately describe what is meant by 'pounds per ½ inch thickness of the structure,'

26  _____

27  [1] The "scored flexural strength" terms, found in claim 21 of the '568 patent, are: "a scored flexural strength of the laminated structure is about 22 pounds per ½ inch thickness of the structure" and

28  "the scored flexural strength being the flexural strength of the laminated structure after the outer, paper-clad surface of one of the first and second gypsum boards has been scored."

1   including but not limited with respect to determining this measurement for a structure that is not

2   ½ inch thick." (*Id.*)

3          On September 12, 2017, the parties met—at a meeting attended by business

4   representatives, senior in-house counsel, and outside litigation counsel.  During that meeting,

5   CertainTeed again explained to Pacific Coast's Vice President, senior in-house counsel, and

6   outside counsel why the asserted claim of the '568 patent is indefinite and Pacific Coast should

7   dismiss the case before wasting more party and judicial resources.  (*See generally* Ex. D (SG-

8   044919-36).)  For example, CertainTeed explained that the '568 patent claim refers to "scored

9   flexural strength," (*id.* at SG-044934), whereas Pacific Coast's previous letter referred only to

10  flexural strength.  (*See* Ex. D, at SG-044934.)  CertainTeed explained the relevant legal standard

11  and analogized the '568 patent to the Federal Circuit's decision in *Teva Pharmaceuticals USA,*

12  *Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015)—just like this Court did in its ultimate

13  claim construction order (D.I. No. 100, at 21). (Ex. D, at SG-044935.)  And CertainTeed explained

14  that the ASTM standard relied on by Pacific Coast "does not describe anything about how to test

15  '<u>scored</u>' flexural strength.'" (Ex. D at SG-044936.)[2]

16         On October 3, 2017, Pacific Coast dismissed its case and CertainTeed in turn dismissed its

17  counterclaims without prejudice so that the parties could discuss a potential business resolution.

18  No such resolution was reached.

19         **B.      Pacific Coast Re-Filed the Present Case in 2018**

20         On January 16, 2018, Pacific Coast refiled its case asserting the same claims of the '568

21  and '738 patents, accusing the same products of infringement.  (D.I. 1.)  On February 13, 2018,

22  CertainTeed answered raising the same affirmative defenses and counterclaims of invalidity, again

23

24

_____

25  [2] CertainTeed understands that Pacific Coast objects to CertainTeed's reference to the September
    12 meeting and the presentation attached as Exhibit D because Pacific Coast believes the parties
26  agreed orally at this meeting that information exchanged at the meeting was not to be used by
    either party for any reason.  CertainTeed disagrees that there was any such agreement, and none
27  of the information disclosed in this Motion or the presentation attached as Exhibit D includes
    anything that could remotely be considered Pacific Coast confidential information.  Moreover,
28  Pacific Coast has confirmed that it has no documentary evidence of the alleged oral agreement.

asserting that the "scored flexural strength" terms of the '568 patent are indefinite.  (D.I. 32, at 16, 26.)

On March 1, 2018, CertainTeed served two interrogatories directed to Pacific Coast's understanding of the "scored flexural strength" terms:

**INTERROGATORY NO. 17:**

Describe in detail the procedures or methodologies used to perform, all products tested, all individuals involved and their respective roles, and all results from the testing referenced in Pacific Coast's Infringement Claim Charts for the patents-in-suit that are attached as Exhibits F, G, and H to Pacific Coast's Complaint; Pacific Coast's response to Interrogatory Nos. 1 and 2; and Pacific Coast's Patent Local Rule 3-1 and 3-2 Disclosures. *Your response should include,* without limitation, an identification and description of the individuals involved in, *the protocols used by, and all results from* Avomeen Analytical Services' testing of the SilentFX® QuickCut product and Green Glue Noiseproofing Compound, and *Pacific Coast's internal tests regarding scored flexural strength of the SilentFX® QuickCut product*.

**INTERROGATORY NO. 18:**

*Describe in detail*, and with citation to any supporting intrinsic and extrinsic evidence, *how to test to determine whether a product or prior art reference satisfies the limitation of "a scored flexural strength of the laminated structure is about 22 pounds per ½ inch thickness of the structure*; the scored flexural strength being the flexural strength of the laminated structure after the outer, paper-clad surface of one of the first and second gypsum boards has been scored" in U.S. Patent No. 9,388,568—*including* but not limited to identifying *the appropriate score depth* to use, any portion(s) of the patent specification or prosecution history supporting the appropriateness of the score depth, and *the mathematical conversions or extrapolations used to convert test results from 5/8 inch thick products to pounds per ½ inch thickness of the structure*, and any portion(s) of the patent specification or prosecution history that support the appropriateness of that mathematical conversion or extrapolation.

(Ex. E (Interrog. Nos. 17-18) (emphases added).)  Pacific Coast's responses were deficient, and CertainTeed sent Pacific Coast several letters requesting supplementation.  (Exs. F-H.)  Pacific Coast supplemented its responses twice.  Regarding score depth, Pacific Coast's position was that "[i]f the score depth is sufficient to cut through the outer paper, marginal additional scoring depth is not believed to be materially relevant to the scored flexural strength of the panel."  (Ex. I, Pl.'s Second Suppl. Resp. to Interrog. No. 17.).  But Pacific Coast failed to address many deficiencies and stopped responding to CertainTeed's deficiency letters.  (*See* Exs. F-H, J.)  For example,

1   Pacific Coast did not provide any information regarding what orientation (i.e., parallel or

2   perpendicular direction) to use when testing scored flexural strength.  (*See id.*)  Instead, Pacific

3   Coast took the position that it "had fully complied with its discovery obligation" regarding

4   Interrogatory No. 17, and Pacific Coast stood on its objections to Interrogatory No. 18, deferring

5   its response until "expert opinions" and "the Court's schedule for claim construction."  (Ex. J, at

6   1-2.)  And Pacific Coast did not respond to CertainTeed's request for information about the panels

7   that were tested and reported on in the '568 patent specification.  (*Compare* Ex. H, *with* Ex. J

8   (seeking information about panels referenced at col. 6, l. 35 – col. 7, l. 4 and in Figures 3 and 4

9   (i.e., sheets or panels labeled A1-A4 through H1-H4) of the '568 patent).)

10      On June 18, 2018, CertainTeed provided invalidity contentions to Pacific Coast that again

11   detailed how the "scored flexural strength" terms were indefinite.  (Ex. K, at 53-54, Ex. C-2.)

12      Pursuant to Patent L.R. 4-2, on July 23, 2018, CertainTeed's claim construction disclosures

13   again identified in detail the basis for its indefiniteness contention.  CertainTeed disclosed, for

14   example, that Dr. Miller would testify that the '568 patent does not provide guidance on how to

15   determine the claimed scored flexural strength.  (Ex. L, at 7-8.)  Specifically, CertainTeed notified

16   Pacific Coast that Dr. Miller would address the following:

17
18   [T]he patent does not provide guidance on 1) the score depth to use, 2) the
     conversion or extrapolation method to use to convert results from 5/8 inch thick
19   boards into pounds per ½ inch thickness, 3) whether the claimed 22 pounds per ½
     thickness is measured on boards scored in the parallel or perpendicular orientation
     of the board as described in the ASTM standard, 4) whether the claimed 22 pounds
20   per ½ thickness is measured on boards scored on the face or opposite side of the
     manufactured board as described in the ASTM standard, and/or 5) other such
21   issues.

22   (*Id.* at 8.)

23      On August 17, 2018, the parties filed a joint claim construction statement pursuant to Patent

24   L.R. 4-3.  (D.I. 75.)  CertainTeed submitted the 44-page declaration of Dr. Miller supporting

25   indefiniteness.  (D.I. 75-2.)  Dr. Miller explained how the patent only identifies a test for measuring

26   flexural strength—ASTM C473-06a—and that the standard does not explain how to measure

27   *scored* flexural strength.  (*See, e.g.*, *id.* at 4, 28-30.)  Specifically, Dr. Miller pointed to the patent's

28   failure to explain how deep to score when measuring scored flexural strength, how to take the four

measurements in different orientations from ASTM C473-06a to arrive at the one claimed scored flexural strength, and how to convert to a scored flexural strength in ½ inch thickness of the structure.  (*See, e.g.*, *id.* at 4-5, 9-11.)  Dr. Miller's declaration also included detailed test results showing that the scored flexural strength of a product varied depending on which test method was used.  (*See id.* at 32-41.)   In contrast, Pacific Coast submitted a 4-page expert declaration containing only four substantive paragraphs.  (D.I. 75-1, ¶¶ 13-16.)  But Mr. Risinger did not even address the four specific criticisms of the "scored flexural strength" terms that CertainTeed had repeatedly explained to Pacific Coast, including in CertainTeed's Patent L.R. 4.2 disclosures. Regarding score depth, Mr. Risinger stated only that scoring meant "to cut through the outer paper," and "that minor variances in the depth of the score into the gypsum panel do not materially affect the strength needed to snap the panel."  (*Id.* ¶¶ 13-14.)  Mr. Risinger did not address the effect of score depth on measuring whether the "scored flexural strength … is about 22 pounds per ½ inch thickness of the structure."  Mr. Risinger did not mention the ASTM C473-06a standard cited repeatedly in the '568 patent.  He also did not even respond to CertainTeed's arguments regarding the four different panel orientations or how to convert for boards of different thicknesses. (*Id.*)

On September 24, 2018, CertainTeed sent Pacific Coast another letter, reminding Pacific Coast that proceeding with this case despite CertainTeed's invalidity arguments would warrant fees.  (Ex. M.)  This letter identified that Dr. Miller's declaration provided undeniable evidence the "scored flexural strength" terms are indefinite.  *Id.*  On October 24, 2018, Pacific Coast responded that it "will be continuing to prepare for trial" but did not address or even attempt to rebut the evidence in Dr. Miller's declaration.  (Ex. N.)

Pacific Coast filed its opening claim construction brief on September 28, 2018. (D.I. 80.) Pacific Coast maintained its general position that score depth and panel orientation do not affect scored flexural strength.  But faced with Dr. Miller's declaration and his testing data, Pacific Coast asserted for the first time that the patent was directed to an ***average*** scored flexural strength value. (*Id.* at 13-14.)  Similarly, for the first time Pacific Coast asserted that "about 22" means "any scored flexural strength of less than 50 pounds."  (*Id.* at 15-16.)  As CertainTeed pointed out in its response

brief, however, the patent examiner previously rejected Pacific Coast's position that it could claim a panel with a scored flexural strength of "less than 50." (D.I. 82, at 19-20.) So in its reply brief, Pacific Coast retreated to the position that its "actual proposed construction for 'about 22 pounds' is approximately the range of 10-34 pounds." (D.I. 83, at 11.)

### C. Markman Hearing, Case Management Conference, and Claim Construction Order

The Court held a Markman Hearing and Case Management Conference on November 29, 2018. The parties presented their claim construction arguments and responded to the Court's questions. Pacific Coast also raised its plan to move to amend the complaint to add another party and to accuse a new product (½ inch SilentFX QuickCut) of infringement. (D.I. 105, at 48:6-49:10, 59:4-22.) Specifically, Pacific Coast asked to add a second Pacific Coast entity, its alleged subsidiary named PABCO Building Products, LLC, as a co-plaintiff based on new information. (*See* D.I. 95, at 2.) Pacific Coast also argued that the only reason it had not accused CertainTeed's ½ inch SilentFX QuickCut product of infringement was because "we have no evidence of its existence." (D.I. 105, at 59:4-20.) The Court denied Pacific Coast's request, citing Pacific Coast's undue delay in waiting almost two years after filing the first complaint. (*Id.* at 49:9-52:5, 59:21-60:17.) When asked by the Court, Pacific Coast also agreed to mediate the dispute by January 17, 2019. (*Id.* at 56:8-9, 57:11-58:4.) As a result, the Court ordered the parties to mediate by January 17, 2019. (*Id.* at 52:9-58:8.)

Hours after the Markman Hearing, the Court issued its claim construction order. The Court held that the "scored flexural strength" terms are indefinite. (D.I. 100, at 24.) The Court first concluded that the claims do not explain how to measure scored flexural strength or how deep to score a panel. (*Id.* at 15.) The Court found that the specification defined how to measure flexural strength, but acknowledged that "is not the same as *scored* flexural strength." (*Id.* at 15-16.) Therefore, the specification also did not explain how to measure scored flexural strength or how deep to score a panel. (*Id.* at 15-16.) Then the Court turned to the extrinsic evidence—and specifically Dr. Miller's declaration—which "confirm[ed] that there is no common understanding in the art of how to measure scored flexural strength." (*Id.* at 16.) Overall, the Court concluded that

1
2
3
4

> although the '568 Patent specification mentions an industry standard for determining flexural strength, the specification never discloses how to measure scored flexural strength. As Dr. Miller's expert evidence indicated, there are many ways of going about determining the scored flexural strength of a panel. Furthermore, converting a scored flexural strength of a 5/8 inch panel to a ½ inch panel introduces even more ambiguity into the claim. Thus, the claim term "scored flexural strength" is indefinite.

5    (*Id.* at 23.)

6        After receiving the Court's claim construction order, Pacific Coast refused to mediate in

7    the Northern District of California. (*See* D.I. 111, at 1-2.) Instead, Pacific Coast insisted that the

8    mediation take place in Dallas—where its outside counsel is located—and not in California where

9    the case was filed and where Pacific Coast is located. (*Id.*) As a result, the mediation never

10   happened.

11       On January 9, 2019, based on the Court's claim construction order, the Court entered a

12   stipulated judgment that claim 21 of the '568 patent is invalid under 35 U.S.C. § 112, ¶ 2.

13   (D.I. 119.)

14   **IV. LEGAL STANDARD**

15       **A.    Indefiniteness**

16       The definiteness standard "must be precise enough to afford clear notice of what is claimed,

17   thereby 'appris[ing] the public of what is still open to them.'" *Nautilus, Inc. v. Biosig Instruments,*

18   *Inc.*, 572 U.S. 898, 909-10 (2014) (alteration in original) (citations omitted). Otherwise, there

19   would be a "zone of uncertainty" because companies would not be able to determine whether they

20   infringe or not. *Id.* Therefore, a patent "is invalid for indefiniteness if its claims, read in light of

21   the specification … and the prosecution history, fail to inform, with reasonable certainty, those

22   skilled in the art about the scope of the invention." *Id.* at 901.

23       When the claim requires a term of measurement, the claim is indefinite when there are

24   multiple ways to perform the measurement and the specification does not describe which one to

25   use. *Teva Pharms.*, 789 F.3d at 1344-45 ("molecular weight can be ascertained by any of three

26   possible measures: $M_p$, $M_n$, and $M_w$" and "[t]he specification never defines molecular weight or

27   even mentions $M_p$, $M_w$, or $M_n$"); *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 803 F.3d 620, 630

28   (Fed. Cir. 2015) ("[W]here multiple known approaches exist," a person having ordinary skill in

the art must know which approach to select.); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1341 (Fed. Cir. 2003) ("Without knowing which sample preparation method to use, one cannot discern whether a yarn was produced using the claimed process.").

### B.    Exceptional Case

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  There are two basic requirements: (1) the case is "exceptional" and (2) the party seeking fees is a "prevailing party." *Id.*  The Supreme Court has defined an "exceptional" case as "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).  The Supreme Court has explained that the district court "in the case-by-case exercise of their discretion, [should consider] the totality of the circumstances" and suggested that the "district courts could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 & n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 & n.19 (1994)).

## V.   ARGUMENT

### A.    Pacific Coast's Exceptionally Meritless and Shifting Positions Set This Case Apart

Pacific Coast had a duty to construe "scored flexural strength" as part of its pre-suit investigation. *See Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1329 (Fed. Cir. 2011) ("[a] reasonable presuit investigation ... requires counsel to perform an objective evaluation of the claim terms").  At the very least, Pacific Coast was required to formulate a reasonable response to CertainTeed's direct assertions that "scored flexural strength" was indefinite in response to CertainTeed's May 5, 2017 Answer; July 28, 2017 letter to Pacific Coast; August 30, 2017 invalidity contentions; and September 12, 2017 presentation to Pacific Coast. *See supra* Part III.A.

But Pacific Coast never did so.  Instead, Pacific Coast pursued the case based on exceptionally meritless positions that stand out from the norm.

Pacific Coast initially gave the unreasonable response that "scored flexural strength" was definite because the specification "provides substantial detail about how a ***flexural strength*** test is to be performed."  (Ex. B, at 3 (Aug. 18, 2017) (emphasis added).)  But CertainTeed's July 28, 2017 letter asserted that "scored flexural strength" was indefinite, not that flexural strength was. (Ex. A, at 3 (emphasis added).)  Pacific Coast's letter was conveniently non-responsive and shows that it knew the patent did not describe "scored flexural strength."  (*Id.* (emphasis added).)  And it was not reasonable to suggest that "scored flexural strength" was definite because the specification provides "substantial detail" regarding flexural strength.

Later, Pacific Coast dropped this argument and made the new argument that score depth does not matter.  *See supra* Part III.B.  For example, Pacific Coast's interrogatory response stated that "marginal additional scoring depth is not believed to be materially relevant to the scored flexural strength of the panel."  (Ex. I, Pl.'s Second Suppl. Resp. to Interrog. No. 17.)  Likewise, Pacific Coast's expert's declaration stated that "that minor variances in the depth of the score into the gypsum panel do not materially affect the strength needed to snap the panel."  (D.I. 75-1, ¶¶ 13-14.)  But this argument defies common sense.  Of course, the deeper one cuts through a panel, the easier it will be to break—as Dr. Miller's declaration proved.  (D.I. 75-2, at 4, 11-12, 13-15, 32-36, 42-43.)

Pacific Coast maintained this position despite never being able to provide any evidence to the contrary.  Pacific Coast never provided any testing or any industry publications to support its position score depth did not matter.  Pacific Coast did submit the conclusory, unsupported opinions of Mr. Risinger.  But Mr. Risinger never testified score depth did not matter when measuring the claimed "scored flexural strength of … about 22 pounds per ½ inch thickness" according to ASTM C473-06a.  Mr. Risinger opined only that "minor variances in the depth of the score … do not materially affect the strength needed to snap the panel."  Mr. Risinger's opinions were irrelevant because "the strength needed to snap a panel" is not the same as the claimed "scored flexural strength of … about 22 pounds per ½ inch thickness."  (*Compare id.*, *with* D.I. 1-1, '568 patent,

cl. 21.)  The "strength needed to snap [a] panel" would seem to depend on a person's strength, and who knows how it is measured.  It also does not have any correlation to measuring "flexural strength" based on the ASTM C473-06a standard or measuring whether the "scored flexural strength … is about 22 pounds per ½ inch thickness," as required by the claim.  *Id.*  In fact, Mr. Risinger's declaration never even mentions ASTM C473-06a standard.  Not to mention, who knows what "minor variances" means?

Pacific Coast also never provided any evidence to rebut CertainTeed's second, independent argument that the "scored flexural strength" terms were indefinite because the patent did not specify the orientation (i.e., parallel, perpendicular, face-up, or face-down) for the measurement.  Pacific Coast's own expert, Mr. Risinger, did not even support Pacific Coast's position.  (*See generally* D.I. 75-1 (Mr. Risinger does not mention parallel or perpendicular orientation or method of conversion).)  In fact, Pacific Coast never even addressed or considered CertainTeed's test results, which prove orientation matters.[3]  Pacific Coast just pretended that CertainTeed's data did not exist.  For example, Pacific Coast never performed a single test or identified a single industry publication to support its position that orientation did not matter.  As the Court recognized, Pacific Coast "offer[ed] no evidence, let alone expert evidence, to support its claim that once scored, the paper fibers on the surface no longer play a role in the board's flexural strength.  Dr. Miller's test results … demonstrate that Plaintiff's position is wrong; whether a specimen is tested in a parallel or perpendicular orientation has an effect on the measurements of scored flexural strength."  (D.I. 100, at 19.)  Instead, Pacific Coast relied solely on attorney argument to rebut CertainTeed's fact-based defense.  As a result, Pacific Coast's response was unreasonable and warrants an award of attorneys' fees.  *See, e.g.*, *Phigenix, Inc. v. Genentech, Inc.*, No. 15-cv-01238-BLF, 2018 WL 3845998, at *7 (N.D. Cal. Aug. 13, 2018) (awarding fees, noting that plaintiff's "theory defied 'common sense'"); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-

---

[3] Of course orientation matters.  The ASTM C473-06a standard specifies testing four different orientations (1) parallel, (2) perpendicular, (3) face-up, and (4) face-down.  (*See, e.g.*, D.I. 75-2, at 15-21.)  If these different orientations did not matter, the industry standard would not require four different measurements.

01708-HRL, 2014 WL 5795545, at *6 (N.D. Cal. Nov. 6, 2014) (awarding fees when a party "repeatedly relied on attorney argument where facts were required").

Knowing it had absolutely no evidence to support its positions that score depth and orientation did not matter, Pacific Coast also resorted to a series of exceptionally meritless fallback positions that stand out from the norm.

Pacific Coast argued that, even though score depth and orientation varied in Dr. Miller's results, the test results should be averaged.  (D.I. 80, at 13-17.)  But neither claim 21 of the '568 patent nor any of Pacific Coast's constructions for claim 21 suggests anything about averaging.  (*E.g.*, D.I. 1-1, '568 patent at cl. 21; D.I. 75, at 3-5; D.I. 100, at 20 (noting there is nothing in the claims about "averages"); D.I. 75-1 (Mr. Risinger never mentions averages or the range covered by "about 22")); *MarcTec LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) (pursuing claim constructions without evidentiary support "reflects a lack of good faith").  And since Pacific Coast admitted that the claim did not require averaging in its own constructions, Pacific Coast's argument is the definition of meritless because, if the averaging limitation is not required by the claim, it cannot possibly save the claim from indefiniteness.  Indeed, the only alleged support that Pacific Coast identified for its "averages" argument was Figure 3 of the '568 patent, but, as the Court noted and is indisputable, "the specification does not disclose how the patentee obtained the results in Figure 3, [and] it is unclear which values and from what tests are being averaged."  (D.I. 100, at 21.)  Notably, CertainTeed even asked Pacific Coast to identify what was being averaged in Figure 3, and Pacific Coast conveniently refused to reply.  (*Compare* Ex. H, *with* Ex. J (seeking information about panels referenced at col. 6, l. 35 – col. 7, l. 4 and in Figures 3 and 4 (i.e., sheets or panels labeled A1-A4 through H1-H4) of the '568 patent).)  As a result, Pacific Coast's argument to average Dr. Miller's test results was exceptionally meritless as compared to the norm.

Pacific Coast also made the exceptionally meritless argument that "about" 22 pounds per ½ inch thickness was so broad that it included the huge variations in Dr. Miller's results.  (*See* D.I. 80, at 15-17; D.I. 83, at 11-12.)  Specifically, Pacific Coast initially took the exceptionally meritless position that "about," interpreted in the context of the specification, "sets forth an upper

limit of 50 pounds for a prior art panel's scored flexural strength in order for the panel to be scored and snapped in the traditional sense." (D.I. 80, at 16.) But after CertainTeed slammed the ridiculousness of that argument in its claim construction brief (D.I. 82, at 19-20), Pacific Coast retreated to the equally meritless position that "about 22" means "approximately the range of 10-34 pounds." (D.I. 83, at 11.) But "about 22" cannot reasonably mean "approximately the range of 10-34 pounds." Pacific Coast simply replaced "about" with "approximately" and rewrote "22" to mean "10-34," all without any support in the specification or Mr. Risinger's declaration. It is exceptionally meritless to suggest that "22" means "the range 10-34." Such an interpretation would read "22" as meaning 22 plus or minus 55%. As a result, Pacific Coast's claim construction arguments regarding "about 22" were exceptionally meritless (like its other arguments) and an award of attorneys' fees is appropriate.

After almost two years of litigation, this Court found the "scored flexural strength" terms indefinite. (D.I. 100, at 24.) Pacific Coast knew or should have known this before filing the first case, by July 2017, before it refiled this case in 2018,[4] and certainly by August 2018 when it received Dr. Miller's declaration. *See Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379-80 (Fed. Cir. 2017) ("district court did not abuse its discretion in awarding fees based on [plaintiff's] failure to reassess the weaknesses of its case"). But Pacific Coast maintained objectively unreasonable and meritless positions that "stand[] out from others." *Octane Fitness*, 572 U.S. at 554. The Court should find this case exceptional under § 285.

### B. Pacific Coast's Expert's Declaration Was Not Credible or Responsive

Pacific Coast must have known its case lacked merit when it saw Dr. Miller's declaration, which stood in stark contrast to Mr. Risinger's four page, off-topic, conclusory declaration with only four paragraphs of substance. But Pacific Coast demonstrated bad faith in refusing to abandon

---

[4] Pacific Coast compounded this evidence of bad faith when it refiled its case against CertainTeed in January 2018, because by then it knew CertainTeed's indefiniteness contention in detail and still failed to investigate it before filing a complaint. *See Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302, 1306-07 (Fed. Cir. 2017) (affirming award of fees where positions plaintiff took "were directly contradicted by the record evidence [plaintiff] had obtained through early discovery and [plaintiff] should have made every effort to discover before filing" (citation omitted)).

its suit in the face of obvious shortcomings.  *See Gabriel Techs. Corp. v. Qualcomm, Inc.*, 560 F. App'x 966, 972 (Fed. Cir. 2014) ("plaintiff's obdurate refusal to abandon their suit—even after being specifically warned about the obvious shortcomings in their claims—strongly supports the trial court's conclusion that they maintained this litigation in bad faith").

Dr. Miller submitted a detailed, 44-page declaration establishing the indefiniteness of the "scored flexural strength" terms (D.I. 75-2), and "conducted extensive testing" to support his opinions (D.I. 100, at 16).  His declaration addressed the patent claims, specification, and prosecution history (D.I. 75-2, at 8-12), and described in detail the ASTM C473-06a standard and how it does not disclose a method for testing *scored* flexural strength (*id.* at 12-28).  And Dr. Miller's test results laid out for the Court and Pacific Coast in detail why the "scored flexural strength" terms were indefinite.  (D.I. 100, at 21-22; *see also, e.g.*, D.I. 75-2, at 28-41 (Dr. Miller's test method and results).)

Pacific Coast's expert, Mr. Risinger, on the other hand, submitted a four-page declaration that was deficient on its face.  (D.I. 75-1.)  Mr. Risinger's opinion, that "minor variances in the depth of the score … do not materially affect the strength needed to snap the panel" was not even relevant to the indefiniteness issue.  (*Id.* ¶ 14; *supra* Parts III.B, V.A.)  Mr. Risinger's declaration is also striking for its failure to describe anything in the patent specification, mention the industry standard ASTM C473-06a referenced repeatedly in the specification, cite any extrinsic evidence or industry publications, and provide any testing or data.  Indeed, Mr. Risinger's declaration was so irrelevant and unhelpful that Pacific Coast's claim construction reply brief never mentioned Mr. Risinger and the Court did not rely on, and barely even mentioned, his opinion when ruling on claim construction.  (D.I. 100, at 16 (Mr. Risinger's report is only mentioned to state that he "did not conduct any independent testing").)  As a result, Pacific Coast's decision to continue the case in the face of Dr. Miller's declaration without any reasonable responses stands out from the norm.

In fact, Pacific Coast's failure to perform any testing of any type or identify any industry publications of any type to rebut CertainTeed's fact-based indefiniteness arguments stands out from the norm by itself.  Thus, an award of attorney's fees is warranted.

### C.   Pacific Coast's Litigation Conduct and Unprofessional Behavior Warrants Fees

Pacific Coast's litigation conduct also provides a basis for awarding fees.  "[I]t is well-established that litigation misconduct and 'unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.'"  *MarcTec*, 664 F.3d at 919 (citation omitted).  And it is appropriate for the Court to consider whether § 285 fees would serve to deter similar misconduct in the future.  *See Octane Fitness*, 572 U.S. at 554 n.6.[5]  Here, Pacific Coast made misrepresentations to the Court and failed to prosecute its case in a reasonable fashion.  For these reasons the Court should find this case exceptional under § 285.

First, Pacific Coast made misrepresentations to the Court in an apparent attempt to keep this case alive.  And making misrepresentations to the Court supports an award of fees.  *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1380 (Fed. Cir. 2009) (finding plaintiff "made 'multiple, repeated misrepresentations to the Court'" (citation omitted)).  For one, in suggesting it might amend its complaint, Pacific Coast told the Court "the reason why we have not brought any claims against [CertainTeed's] ½ inch product is we have no evidence of its existence."  (D.I. 105, at 59:9-15.)  Not so.  For example, Pacific Coast attached a marketing brochure for SilentFX QuickCut to its 2017 ***and*** 2018 complaints, and that marketing brochure identifies both the ½ inch and the $5/8$ inch products:

---

[5] The consideration of deterrence is particularly relevant here.  Pacific Coast, represented by the same counsel, filed another lawsuit against CertainTeed Gypsum Manufacturing, Inc. accusing the same product of infringing patents related to the '568 patent.  *Pacific Coast Building Prods., Inc. v. CertainTeed Gypsum Mfg., Inc.*, No. 18-4165 (W.D. Ark.).  Awarding fees here would deter Pacific Coast from engaging in similar misconduct in that related case.

(Case No. 5:17-cv-01116, D.I. 1-1, at 53; D.I. 1-1, at 53.)  In addition, on May 31, 2018, CertainTeed specifically told Pacific Coast that "[t]he first sale of the ½" SilentFX® QuickCut product was in February 2016."  (Ex. O (Defs.' Resp. to Interrog. No. 3).)

Similarly, Pacific Coast suggested that it learned facts about another party relevant to its lost profits claim after it filed the case.  (*See* D.I. 95, at 2 (Pacific Coast anticipated amending its complaint to add another party); D.I. 105, at 48:6-48:25.)  But Pacific Coast had complete access to this other party before either of the cases were even filed—this other party (PABCO Building Products, LLC) is a subsidiary of Pacific Coast.  (D.I. 105, at 48:17-23; *see also, e.g.*, Pac. Coast Bldg. Prods., Inc., *Our Family of Companies*, http://paccoast.com/our-companies/ (last visited Jan. 23, 2018).)

Second, Pacific Coast also said it was willing to mediate (D.I. 105, at 57:11-58:4), but then refused to mediate in the Northern District of California, instead insisting that CertainTeed mediate in Dallas where Pacific Coast's principle outside counsel is located (D.I. 111, at 1-2).  Pacific Coast's demand to mediate in Dallas baldly shows that, while Pacific Coast thought it was fine to make the Court and CertainTeed litigate these cases, Pacific Coast was not even willing to appear in the Northern District of California to mediate a resolution.

Third, Pacific Coast caused CertainTeed to incur unnecessary costs.  That supports awarding fees.  *MarcTec*, 664 F.3d at 920-21 (affirming award of fees where plaintiff "unnecessarily extended this litigation and caused [defendant] to incur needless litigation expenses"); *cf. Oplus Techs. Ltd. v. Vizio, Inc.*, 782 F.3d 1371, 1375 (Fed. Cir. 2015) (district court found that plaintiff's conduct likely caused defendant to incur more costs, and Federal Circuit

1    vacated decision denying fees).  For example, Pacific Coast failed to produce information required

2    by Patent L.R. 3-1 and 3-2, forcing CertainTeed's motion to strike regarding damages contentions.

3    (*See* D.I. 89.)  By way of further example, CertainTeed had to prepare at least three draft joint

4    statements to Magistrate Judge van Keulen to get Pacific Coast to participate in fact discovery.

5    CertainTeed prepared a draft joint statement because Pacific Coast failed to produce basically all

6    documents (Ex. P), because Pacific Coast delayed producing custodian data for those documents

7    until January 2019 (Ex. Q), and because Pacific Coast was unwilling to amend it damages

8    contentions or respond to an interrogatory seeking the factual basis for its claim to damages for

9    the '738 patent (Ex. R).  Each of those joint statements, prepared only to compel Pacific Coast to

10   participate in the discovery process, forced CertainTeed to incur unnecessary costs.

11         **D.      CertainTeed's Fees Are Reasonable**

12          "[I]t is clear that the aim of § 285 is to compensate a defendant for attorneys' fees it should

13   not have been forced to incur."  *Kilopass Tech., Inc. v. Sidense Corp.*, 738 F.3d 1302, 1313 (Fed.

14   Cir. 2013).  Where a prevailing party "has obtained excellent results, his attorney should recover

15   a fully compensatory fee."  *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Hensley*

16   *v. Eckerhart*, 461 U.S. 424, 435 (1983)).

17          Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(iii), CertainTeed provides the

18   following current estimate of the fees in Case Nos. 5:17-cv-01116 and 5:18-cv-000346 that it

19   intends to seek in the event this litigation is determined to be exceptional.

20
21   | Attorneys' Fees Related to the '568 | $1,596,822 |
     | --- | --- |

22          Once the Court finds this litigation exceptional and determines that CertainTeed is entitled

23   to an award under § 285, CertainTeed will provide an accounting of its fees.  *See* Fed. R. Civ. P.

24   54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the

25   value of services."); *id.* advisory committee's note to 1993 amendment ("The rule does not require

26   that the motion be supported at the time of filing with the evidentiary material bearing on the

27   fees….  What is required is the filing of a motion sufficient to alert the adversary and the court that

28   there is a claim for fees and the amount of such fees (or a fair estimate).")

# VI. CONCLUSION

For the foregoing reasons, CertainTeed respectfully requests that the Court grant its motion and award fees under 35 U.S.C. § 285.

Dated:  January 23, 2019

Respectfully submitted,

CERTAINTEED GYPSUM, INC.

*/s/ Richard G. Frenkel*
Richard G. Frenkel (Bar No. 204133)
*rick.frenkel@lw.com*
LATHAM & WATKINS LLP
140 Scott Drive
Menlo Park, CA 94025
Telephone:  (650) 328-4600
Facsimile:   (650) 463-2600

Matthew J. Moore (*pro hac vice*)
  *matthew.moore@lw.com*
Adam M. Greenfield (*pro hac vice*)
  *adam.greenfield@lw.com*
Rebecca L. Rabenstein (*pro hac vice*)
  *rebecca.rabenstein@lw.com*
Abigail A. Rives (*pro hac vice*)
  *abigail.rives@lw.com*
Diane E. Ghrist (Bar No. 300487)
  *diane.ghrist@lw.com*
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:  (202) 637-2200
Facsimile:   (202) 637-2201

*Attorneys for Defendants*
*CertainTeed Gypsum, Inc. and*
*Saint-Gobain Performance Plastics Corp.*