UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PACIFIC COAST BUILDING PRODUCTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CERTAINTEED GYPSUM, INC., et al., <br><br> Defendants. | Case No. 18-CV-00346-LHK <br><br> **ORDER DENYING DEFENDANT CERTAINTEED GYPSUM, INC.'S RENEWED MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. No. 151 |

Plaintiff Pacific Coast Building Products, Inc. sued Defendants CertainTeed Gypsum, Inc. ("CertainTeed") and Saint Gobain Performance Plastics Corp. for patent infringement. As relevant here, Plaintiff claimed that CertainTeed infringed U.S. Patent No. 9,388,568 (the '568 patent). ECF No. 119. On November 29, 2018, the Court held that claim 21 of the '568 patent is invalid as indefinite. ECF No. 100. On June 30, 2020, the Federal Circuit affirmed the Court's invalidity finding. ECF No. 150. Before the Court is CertainTeed's motion for attorney's fees pursuant to 35 U.S.C. § 285. ECF No. 151. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court DENIES CertainTeed's motion for attorney's fees.[1]

---

[1] CertainTeed's motion to dismiss contains a notice of motion paginated separately from the

1
Case No. 18-CV-00346-LHK
ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

## I. BACKGROUND

### A. Background and Description of the '568 Patent

CertainTeed and Plaintiff are competitors in the drywall industry. In 2013, the original assignee of the '568 patent application (filed in April 6, 2007) put its patent portfolio up for sale. Opp'n at 3, ECF No. 169. Both CertainTeed and Plaintiff bid for the '568 patent, and Plaintiff won the bid. *Id.* The '568 patent, titled "Acoustical Sound Proofing Material with Improved Fracture Characteristics and Methods for Manufacturing Same," issued on July 12, 2016.

The '568 patent recognizes that prior art "laminated damped drywall panel," which provides noise damping, can replace traditional drywall in construction. '568 Patent at 1:59–65. However, laminated damped drywall panel cannot be easily cut to size at construction sites. Panels often "must be scored multiple times and broken with great force over the edge of a table or workbench." *Id.* at 1:67–2:4. The reason laminated damped drywall panel is so difficult to break is because "the component gypsum layers [of the panels] have a liner back paper (or liner fiberglass nonwoven) that has a high tensile strength." *Id.* at 2:6–10. The '568 patent specification defines flexural strength to be the panel's "ability to resist breaking when a force is applied to the center of a simply supported panel." *Id.* at 2:46-48. When a panel is being fitted for installation, a low flexural strength is desired because once the installer scores the panel, "a low [flexural strength] value indicates that the scored panel may be easily fractured by hand without excessive force." On the other hand, "[f]or a pristine panel, a high flexural strength is desirable since it allows for easy transportation and handling without panel breakage." *Id.* at 2:56–68.

The invention tries to ease panel installation by lowering flexural strength. Specifically, the invention is a laminate panel with two gypsum layers held together by a sound-damping glue layer. *Id.* at 4:38–45. The gypsum that touches the glue is "unfaced," meaning that it lacks a paper or fiberglass liner. *Id.* at 6:44–46. The gypsum on the outside of the panel, by contrast, has a

---

memorandum of points and authorities in support of the motion. ECF No. 151 at 2. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with the same pagination.

1 reinforcing liner. According to the '568 patent, scoring the liner makes the panel easier to break
2 than the prior art laminated damped dry wall panel, which has an inner liner with high tensile
3 strength. *Id.* at 2:6–10.

### B. Procedural History

On January 16, 2018, Plaintiff filed the instant patent infringement suit against Defendant CertainTeed and Defendant Saint Gobain Performance Plastics Corp. ECF No. 1. As relevant here, Plaintiff alleged that CertainTeed infringed the '568 patent. ECF No. 119. On

On August 29, 2018, the parties filed a joint claim construction and prehearing statement. ECF No. 75. The parties' claim construction dispute included two dispositive terms about "scored flexural strength" in claim 21 of the '568 Patent. ECF No. 75 at 1–5. The table below illustrates the disputed terms and the parties' proposed constructions of the terms:

| Claim Term | Plaintiff's Proposed Construction | CertainTeed's Proposed Construction |
|---|---|---|
| a scored flexural strength of the laminated structure is about 22 pounds per ½ inch thickness of the structure | The flexural strength of the laminated panel after the outer, paper-clad surface of one of the first and second gypsum boards has been scored is about 22 pounds per ½ inch thickness | Indefinite |
| the scored flexural strength being the flexural strength of the laminated structure after the outer, paper-clad surface of one of the first and second gypsum boards has been scored | Plain and ordinary meaning | Indefinite |

ECF No. 100.

On November 29, 2018, the Court construed the disputed terms in claim 21. ECF No. 100. The Court agreed with CertainTeed that "scored flexural strength" was indefinite. *Id.* at 23. The Court reasoned that "the ['568 patent] specification never discloses how to measure scored flexural strength." *Id.* "[F]ollowing the Patent's own directions to use ASTM C473-06a to test for scored flexural strength would result in four values for flexural strength—perpendicular face up

3

Case No. 18-CV-00346-LHK
ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

and face down, and parallel face up and face down—not one value as in the Patent claim." *Id.* at 22. "Furthermore, the depth at which to score the panel is left unspecified." *Id.* at 23.

Plaintiff sought to appeal the Court's indefiniteness finding. Thus, on January 9, 2019, the Court granted the parties' stipulation to enter judgment in favor of CertainTeed. ECF No. 119. On February 6, 2019, Plaintiff appealed to the U.S. Court of Appeals for the Federal Circuit. ECF No. 124.

Meanwhile, CertainTeed filed its motion for attorneys' fees. ECF No. 121 ("Mot."). On May 17, 2019, the Court denied CertainTeed's motion without prejudice pending the Federal Circuit's decision. ECF No. 139. The Court granted CertainTeed leave to renew its motion after any decision from the Federal Circuit. *Id.* at 2.

On June 30, 2020, the Federal Circuit affirmed the Court's invalidity finding. *See Pac. Coast Bldg. Prod., Inc. v. CertainTeed Gypsum, Inc.*, 816 F. App'x 455 (Fed. Cir. 2020), ECF No. 150. The Federal Circuit held that "a skilled artisan would have had no reasonable certainty in trying to figure out how to calculate a single value for the scored flexural strength of a drywall board." *Id.* at 460.

On August 6, 2020, CertainTeed filed the instant renewed motion for attorneys' fees. ECF No. 151 ("Renewed Mot."). On September 10, 2020, Plaintiff filed its opposition to the instant motion. ECF No. 169 ("Opp'n"). On October 7, 2020, CertainTeed filed its reply supporting the instant motion. ECF No. 170 ("Reply").

## II. LEGAL STANDARD

Pursuant to 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party" in patent litigation. The United States Supreme Court established the governing standard for determining whether an award of attorney's fees is appropriate in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014). In *Octane*, the United States Supreme Court held that an exceptional case under § 284 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated." *Id.* at 554. District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555. Ultimately, the decision of whether to award attorney's fees is left to the Court's discretion and is reviewed on appeal only for abuse of discretion. *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014).

**III.   DISCUSSION**

For purposes of the instant motion, it is undisputed that CertainTeed is the prevailing party because the Federal Circuit affirmed the Court's finding that claim 21 of the '568 patent is invalid. CertainTeed argues that this is an exceptional case warranting an award of attorney's fees on two grounds. First, CertainTeed argues that Plaintiff's litigation position was exceptionally meritless because Plaintiff consistently lacked factual support. Reply at 1–8. Second, CertainTeed argues that Plaintiff engaged in litigation misconduct. *Id.* at 8–13. Neither argument is persuasive. The Court addresses each in turn.

**A.   Plaintiff's litigation position was not exceptionally meritless.**

To start, Plaintiff's litigation position was not "exceptionally meritless." *Octane*, 572 U.S. at 555. "[A]s the Supreme Court made clear in *Octane*, fee awards are not to be used 'as a penalty for failure to win a patent infringement suit.'" *Gaymar Indus., Inc. v. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015) (quoting *Octane*, 572 U.S. at 548). "[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (Dyk, Circuit J., sitting by designation); *see also, e.g.*, *Gametek LLC v. Zynga, Inc.*, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (declining to find case exceptional because plaintiff's litigating position, though weak, did not "descend to the level of frivolous argument or objective unreasonableness").

Here, the Court's rejection of Plaintiff's arguments is insufficient to merit finding the case

exceptional. The Court reaches this conclusion on three grounds.

First, Plaintiff had some factual support for its position that claim 21 was definite and thus valid. Plaintiff's position turned on whether the term "scored flexural strength" was definite as to score depth (how deeply one cuts into a panel) and flexural strength (the force needed to snap the drywall panel). *See* Plaintiff's Opening Claim Construction Br. at 3–27, ECF No. 80. Plaintiff cited, among other things, expert deposition testimony that (1) "'scoring' means cutting the paper" liner of a panel and not much deeper; and (2) the orientation of paper fibers is "what causes a difference" in flexural strength measurements—which suggests that the panel's orientation is immaterial once the paper fibers are cut. *Id.* at 6–7, 14; *see also* Opp'n at 9–12 (collecting Plaintiff's factual support for position that claim 21 was definite). These arguments did not "descend to the level of frivolous argument or objective unreasonableness." *Gametek*, 2014 WL 4351414, at *3.

Second, because Plaintiff's arguments were not unreasonable, they required careful analysis. Specifically, the Court found that claim 21 was indefinite only after analyzing for 12 pages: (1) claim language; (2) the '568 patent specification; (3) patent prosecution history; and (4) extrinsic evidence. This analysis included a consideration of industry testing standards (*i.e.*, American Society of Testing and Materials standard C473-06a); Federal Circuit case law; competing expert testimony; and more. *Id.* The Federal Circuit then affirmed the Court after 11 pages of detailed analysis. ECF No. 150.

Lastly, a statutory presumption supported Plaintiff's position that claim 21 was definite. 35 U.S.C. § 282(a) provides that "each claim of a patent shall be presumed valid" after a patent is issued. The "presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015). The presumption attached to the '568 patent when it issued on July 12, 2016. ECF No. 100 at 2. Thus, "[Plaintiff] reasonably believed its patent to be valid in light of the statutory presumption of validity," and the Court "cannot say that [Plaintiff]'s expectation of the [] patent's validity was frivolous." *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1303 (Fed. Cir. 2004).

Accordingly, the Court rejects CertainTeed's first argument for an award of attorney's fees because Plaintiff's litigation position was not exceptionally meritless.

**B. Plaintiff did not engage in litigation misconduct.**

CertainTeed's other argument for an award of attorney's fees is that Plaintiff engaged in litigation misconduct. The Court disagrees.

As a general matter, "post-*Octane* decisions awarding fees have generally cited egregious behavior" as the litigation conduct necessary to support a fees award. *Vasuedevan Software, Inc. v. Microstrategy, Inc.*, 2015 WL 4940635, at *5 (N.D. Cal. Aug. 19, 2015). Such egregious behavior "generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011). A case CertainTeed cites is an illustrative example. *See* Mot. at 9 (citing *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314 (Fed. Cir. 2011)). In *Eon-Net*, the Federal Circuit upheld an award of attorneys' fees because plaintiff had (1) "destroyed relevant documents"; (2) "displayed a 'lack of regard for the judicial system'" in at least two cases; and (3) tried to "extract a nuisance value settlement" in a lawsuit that had "indicia of extortion." *Eon-*Net, 653 F.3d at 1324, 1326–27. By contrast, "overly aggressive litigation tactics" alone may not justify a fees award. *Vasuedevan Software*, 2015 WL 4940635, at *6; *accord Gametek*, 2014 WL 4351414, at *5 (rejecting motion for attorney's fees where allegations suggested only "an aggressive litigation strategy" by the losing party). Thus, only in extraordinary cases will the Court award attorneys' fees based on litigation conduct.

Plaintiff's litigation conduct is nothing like that in *Eon-Net*. Rather, CertainTeed argues that Plaintiff engaged in two forms of different litigation misconduct: (1) misrepresentations to the tribunal or patent offices; and (2) discovery delays that led to excess costs. The Court addresses each in turn.

First and most important, CertainTeed argues that Plaintiff made several misrepresentations to the Court, the U.S. Patent and Trademark Office, the Federal Circuit, and the European Patent Office. *See* Reply at 8–13; Mot. at 15–17. As to purported misrepresentations to

7
Case No. 18-CV-00346-LHK
ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES

the Court, CertainTeed cites the following:

- On November 21, 2018, Plaintiff told the Court in a joint case management statement that it anticipated filing an amended complaint that would add a party. ECF No. 95 at 2. Plaintiff ultimately did not add that party to the case.

- On November 29, 2018 at the claims construction hearing, Plaintiff told the Court that "the reason why we have not brought any claims against [CertainTeed's] ½ inch product is we have no evidence of its existence.'" Mot. at 15. This statement was allegedly a misrepresentation because (1) Plaintiff later attached to its complaints a marketing brochure that identifies CertainTeed's ½ inch product; and (2) CertainTeed had averred in a May 31, 2018 interrogatory response that its ½ inch product was first sold in February 2016. *Id.* at 16.

- Also on November 29, 2018, Plaintiff represented that it was open to mediation and "meaningfully talk[ing] about a business resolution." ECF No. 105 at 57:5. In setting a location for the mediation, Plaintiff proposed either mediating in Dallas or flying a Texas mediator to this district. ECF No. 110 at 2–3. CertainTeed argues that Plaintiff's preference for mediating in Dallas "baldly shows" that Plaintiff was unwilling to mediate. Mot. at 16.

The most concerning of the above representations is Plaintiff's statement that "we have no evidence of" CertainTeed's ½ inch product. However, on the record here, the Court cannot conclude this was an egregious misstatement. The record does not indicate whether Plaintiff's representation was an "isolated overstatement" or "sloppiness . . . [that] does not amount to misrepresentation or misconduct." *Gaymar*, 790 F.3d at 1376–77 (reversing finding of litigation misconduct). As the Federal Circuit explained in *Gaymar*, even representations that are "[w]ithout question . . . overstatements" can fail to support an award of attorneys' fees for litigation misconduct. *Id.* at 1376.

Thus, the Court cannot conclude that any of the above constitutes the "egregious behavior" necessary to support an award of attorneys' fees. *Vasuedevan Software, Inc.*, 2015 WL 4940635, at *5. A plaintiff commits the necessary egregious behavior where, for example, the plaintiff destroys evidence, disregards the judicial system in at least two cases, and tries to "extort[]" a settlement. *Eon*-Net, 653 F.3d at 1324–27 (affirming attorneys' fee award). The *Eon-Net* plaintiff's litigation conduct was substantially worse than Plaintiff's alleged conduct here.

As to alleged misrepresentations to the U.S. Patent and Trademark Office ("USPTO"), CertainTeed alleges that Plaintiff has not disclosed the indefiniteness of "scored flexural strength" in prosecuting two child patent applications for the '568 patent. Renewed Mot. at 3. Yet CertainTeed fails to explain how an alleged lack of candor to *the USPTO* about patents *not asserted in this case* constitutes litigation misconduct in the instant case. Nor does CertainTeed explain why the Court should find in the first instance that CertainTeed has made misrepresentations to the USPTO. The USPTO is best situated to adjudicate whether patentees have violated duties of candor before the USPTO and to impose appropriate sanctions. *See* USPTO, *Manual of Patent Examining Procedure* § 2016, https://www.uspto.gov/web/offices/pac/mpep/s2016.html (discussing fraud, inequitable conduct, or violation of duty of disclosure).

The last set of alleged misrepresentations were to the Federal Circuit and the European Patent Office ("EPO"). CertainTeed alleges that Plaintiff took contradictory positions before the two bodies. Plaintiff asserted to the Federal Circuit that "[t]here is only one appropriate method for converting the scored flexural strength values to address various board thicknesses—linear conversion." Renewed Mot. at 3 (quoting Federal Circuit brief). In a separate proceeding before the EPO, Plaintiff argued that its European patent application "disclose[d] the invention in a manner sufficiently clear and complete for it to be carried out by a person skilled in the art." Opp'n at 20 (quoting European Patent Convention, Art. 83). As part of its argument, Plaintiff stated that CertainTeed's expert had described *two* methods for converting scored flexural strength:

> Dr. [Paul] Miller described in D8 at least two methods for conversion of the results to scored flexural strength per half-inch thickness which are known in the field. The skilled person would readily appreciate that *either technique may be used to generate a value within the experimental accuracy*, and would [be] eminently capable of calculating the error range of such a calculation based on standard mathematical practices. Thus, the skilled person is able to calculate if, within experimental error, a laminate has the required scored flexural strength per half-inch thickness without undue burden.

Opp'n at 21 (quoting ECF No. 151-4 ¶ 4.4.5) (emphasis added).

Here, Plaintiff makes a subtle but colorable distinction: that Plaintiff's position to the EPO was about whether "a person skilled in the art"—such as CertainTeed's expert Dr. Miller—could carry out the invention. Plaintiff specifically argued to the EPO that even where Dr. Miller did not use the methodology of linear conversion, Dr. Miller was able to carry out the invention. Opp'n at 21. In other words, Plaintiff argued that Dr. Miller found the patent's claimed flexural strength (about 22 pounds) with either testing methodology. *Id.* at 20 (quoting ECF No. 151-4 ¶ 4.2.3). Plaintiff thus asserts that it made two logically consistent points: (1) the appropriate method for measuring scored flexural strength was linear conversion; and (2) CertainTeed's expert Dr. Miller had arrived at the correct flexural strength of 22 pounds by another less appropriate method.

On the record here, the Court cannot conclude that Plaintiff's arguments to the Federal Circuit and EPO constituted "egregious behavior." *Vasuedevan Software, Inc.*, 2015 WL 4940635, at *5. To the extent that Plaintiff did make misrepresentations, those bodies are best equipped to adjudicate those misrepresentations in the first instance. Moreover, the Court notes that Plaintiff made its allegedly inconsistent statements in an EPO proceeding initiated by Saint Gobain Performance Plastics Corporation—CertainTeed's co-Defendant here and co-appellee in the Federal Circuit. Opp'n at 22. Thus, Saint Gobain, who shares CertainTeed's interest, could raise any alleged inconsistencies by Plaintiff with the appropriate bodies.

In all, based on the record here, Plaintiff's statements to the Court, USPTO, Federal Circuit, and EPO do not meet the extraordinary standard for "egregious" litigation misconduct. *Vasuedevan Software, Inc.*, 2015 WL 4940635, at *5; *see, e.g.*, *Gaymar*, 790 F.3d at 1376 (analogizing misconduct standard to Rule 11 sanctions standard); *Eon-Net*, 653 F.3d at 1324–27 (affirming attorneys' fee award where plaintiff destroyed evidence, disregarded the judicial system, and tried to "extort[]" a settlement). Moreover, the USPTO, Federal Circuit, and EPO are better situated to evaluate if they were deceived.

CertainTeed's other allegation of litigation misconduct is that Plaintiff "caused CertainTeed to incur unnecessary costs." Mot. at 17. CertainTeed specifically argues that Plaintiff

10

failed to timely produce information, which led to CertainTeed filing a motion to strike (ECF No. 89), and drafting three joint statements to Magistrate Judge Susan van Keulen. *Id.*

CertainTeed's argument is meritless. CertainTeed withdrew the motion to strike after conferring with Plaintiffs. ECF No. 106. Indeed, the only motion to compel that was actually granted in this case was filed by *Plaintiff*. ECF No. 70. As for the three draft statements, the parties dispute whether these were necessary. Opp'n at 18. Yet under the totality of the circumstances here, the drafting of extra joint discovery statements fails to show that Plaintiff engaged in "egregious behavior." *Vasuedevan Software, Inc.*, 2015 WL 4940635, at *5. The Court can at most conclude that Plaintiff engaged in "mere sloppy or overzealous lawyering." *Gaymar*, 790 F.3d at 1377 (quoting *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1402–03 (9th Cir. 1992)). This behavior fails to support an attorneys' fee award.

All told, considering the totality of the circumstances, *see Octane*, 572 U.S. at 554, the Court concludes that the instant case is not exceptional under 35 U.S.C. § 285. Accordingly, the Court declines to exercise its discretion to award attorney's fees to CertainTeed.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES CertainTeed's motion for attorney's fees.

**IT IS SO ORDERED.**

Dated: January 7, 2021

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

11
Case No. 18-CV-00346-LHK
ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES